OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
CHRISTOPHER W. DECKER, CA Bar No. 229426
christopher.decker@ogletree.com
HAIK KOLSUZYAN, CA Bar No. 358541
haik.kolsuzyan@ogletree.com
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone: 213-239-9800
Facsimile: 213-239-9045

Attorneys for Defendant
CALERES, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS RAMIREZ, individually, and on behalf of other similarly situated employees,<br><br>        Plaintiff,<br><br>    vs.<br><br>CALERES, INC; and DOES 1 through 25, inclusive,<br><br>        Defendants. | Case No. 2:26-cv-00014<br><br>**DEFENDANT CALERES, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT**<br><br>*[Filed concurrently with Civil Cover Sheet; Certification of Interested Parties; Corporate Disclosure Statement; Notice of Related Cases and Pendency of Other Actions; and Declarations of Magdalena Sudibjo, Tom Burke, Becky Helvey and Christopher W. Decker in support of Removal]*<br><br>Action Filed:    September 19, 2025<br>Trial Date:      None |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF JESUS RAMIREZ AND HIS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT defendant Caleres, Inc. ("Caleres" or "Defendant"), by and through the undersigned counsel, hereby removes the above-entitled action from the Superior Court of the State of California for the County of Santa Bernardino to the United States District Court for the Central District of California, pursuant to 28 U.S.C. sections 1332, 1441(a), 1446, and 1453. In support of such removal, Defendant states as follows:

## I.    BACKGROUND

1.      On or about September 19, 2025, plaintiff Jesus Ramirez ("Plaintiff") commenced this action by filing an unverified Class Action Complaint ("Complaint") in the Superior Court of California, County of San Bernardino, captioned *Jesus Ramirez v. Caleres, Inc.*, and bearing case number CIVRS2508046 (the "State Court Action").  (True and correct copies of the Summons, Complaint, and Civil Case Cover Sheet are attached as **Exhibit A** to this Notice of Removal ["Notice"].)

2.      On or about November 12, 2025, Plaintiff served Defendant with the Summons, Complaint, and Civil Case Cover Sheet.  (Declaration of Christopher W. Decker ["Decker Decl."], ¶ 2.)

3.      The Complaint asserts claims for:  (1) Violation of California Labor Code §§ 1194, 1197, and 1197.1 (Unpaid Minimum Wages); (2) Violation of California Labor Code §§ 510 and 1198 (Unpaid Overtime); (3) Violation of California Labor Code §§ 226.7 and 512(a) (Meal Break Violations); (4) Violation of California Labor Code §§ 226.7 (Rest Break Violations); (5) Violation of California Labor Code §§ 204 and 210 (Wages Not Timely Paid During Employment); (6) Violation of California Labor Code §§ 226(a) (Wage Statement Violations); (7) Violation of California Labor Code § 201, 202, and 203 (Untimely Final Wages); (8) Violation of California Labor

1  Code §§ 2800 and 2802 (Failure to Reimburse Necessary Business Expenditures); and

2  (9) Violation of California Business & Professions Code §§ 17200, *et seq.*

3      4.      On September 30, 2025, Judge Tony Raphael of the San Bernardino

4  County Superior Court issued a Notice of Case Assignment for All Purposes and

5  Notice of Case Management Conference ("Case Assignment Order"). (A true and

6  correct copy of the Case Assignment Order is attached as **Exhibit B** to this Notice.)

7      5.      On November 12, 2025, Plaintiff served Defendant with the Case

8  Assignment Order. (Decker Decl., ¶ 3.)

9      6.      On December 12, 2025, Defendant filed and served an Answer to

10  Plaintiff's Complaint. (Decker Decl., ¶ 4.) (A true and correct copy of the Answer is

11  attached as **Exhibit C** to this Notice.)

12      7.      As required by 28 U.S.C. section 1446(a), Defendant has provided this

13  Court with copies of all pleadings, process, or orders received by Defendant in the

14  State Court Action. Defendant has not been served with any pleadings, process, or

15  orders besides those that are attached to the Notice of Removal. (Decker Decl., ¶ 5.)

16      8.      As set out more fully below, based on the allegations of the Complaint

17  and other evidence collected by Defendant, this Court has original jurisdiction over

18  this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. section 1332(d),

19  and hence the action may be removed by Defendant pursuant to 28 U.S.C. sections

20  1441 and 1453.  Original jurisdiction exists here because there are at least 100 class

21  members in plaintiff's proposed class, the combined claims of all class members

22  exceed $5,000,000 exclusive of interest and costs, and Defendant is a citizen of a

23  different state than at least one class member. *See* 28 U.S.C. §§ 1332(d)(2) and (d)(6).

## II.  **DEFENDANT HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL.**

### A.  **Timeliness**

27      9.      The time to remove under 28 U.S.C. section 1446(b) does not begin to

28  run until ***receipt by the defendant***, through service or otherwise, of a pleading, motion,

order or other paper from which it may first be ascertained that the case is one which is or has become removable. *Harris v. Bankers Life and Cas. Co*., 425 F.3d 689, 694 (9th Cir. 2005). Here, the four corners of the Complaint do not provide readily ascertainable grounds for removal. *See generally* Compl; Prayer for Relief. The Complaint does not allege sufficient facts to calculate the amount in controversy with reasonable certainty as to the individually named plaintiff or as to the putative class. The Complaint does not allege the size of any putative class nor does it allege any claim under federal law. Accordingly, as mentioned, it is not possible to ascertain from the Complaint that this case is removable, and, to date, Defendant has not received any other document which would constitute an "other pleading, motion, order or other paper" providing this missing information. (Decker Decl. ¶ 5.) Accordingly, the time to remove this action has not yet begun. Where the time to remove has not yet expired, a defendant may remove at any time if it uncovers evidence establishing that the case is removable. *Roth v. CHA Hollywood Medical Center, L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013). As set forth below, Defendant has only recently discovered such evidence after an arduous collection and review of all records of potential class members and a complex analysis of the estimated damages allocated to each cause of action. Therefore, Defendant is timely removing this case based on that discovery.

10. This Notice is also timely because Defendant's calculations based on its records in support of the Notice cannot trigger the time to remove, as those calculations are not an amended pleading, motion, order or other paper *received* by Defendant. "The 'other paper' in section 28 U.S.C. section 1446(b)(3) cannot be one created by defendant; it 'must derive from either the voluntary act of the plaintiff … or other acts or events not the product of the removing defendant's activity.'" *Adelpour v. Panda Express, Inc.*, 2010 WL 2384609, *4 n.7 (C.D. Cal. June 8, 2010) (citation omitted); *Mejia v. General Motors LLC*, 2025 WL 2983127, *4 (Oct. 22, 2025) (The deadline to remove "begins running upon 'defendant's receipt of a document from the plaintiff

or the state court—*not by any action of defendant.*'") (emphasis added) (citation omitted); *Hip Hop Beverage Corp. v. Michaux*, 2016 WL 4034777, *4 (C.D. Cal. July 25, 2016) ("[F]acts discovered during an independent investigation do not trigger the removability clock"); *Owens v. L'Occitane, Inc.*, 2013 WL 941967, *8 (C.D. Cal. March 8, 2013) ("The requirement that the removing defendant receive a pleading or 'other paper' means that the 'document that triggers the thirty-day removal period cannot be one created by the defendant…").  Therefore, this Notice is timely.

**B.    Venue**

11.    The Superior Court of California for the County of San Bernardino is located within the Central District of California.  Therefore, the action is properly removed to this Court pursuant to 28 U.S.C. section 84(d) because it is the "district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

**C.    Procedural Requirements**

12.    Pursuant to 28 U.S.C. section 1446(a), copies of all process, pleadings, and orders served upon Defendant and filed by Defendant are attached to this Notice. (Decker Decl., ¶ 5.)

13.    Pursuant to 28 U.S.C. section 1446(d), a copy of the Notice of Removal is being served upon counsel for Plaintiff and a copy is being filed with the Clerk of the Superior Court of California in the County of San Bernardino.  True and correct copies of the Notice to the Plaintiff and the state court shall be filed promptly.

## III.    THE CASE IS REMOVABLE PURSUANT TO CAFA

14.    As set forth below, Plaintiff's claims as alleged in the Complaint are removable under 28 U.S.C. § 1332(d).

15.    Under CAFA, the Federal District Court has jurisdiction if:

(a)    There are at least 100 class members in all proposed plaintiff classes; and

(b)    The combined claims of all class members exceed $5 million exclusive of interest and costs; and

(c)    Any class member (named or not) is a citizen of a different state than any defendant.  28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), and 1453(a).

16.    In *Dart Cherokee Basin Operating Co. v. Owens*, 132 S.Ct. 547 (2014), the U.S. Supreme Court provided significant clarification to the standards applicable to notices of removal in CAFA cases, establishing a much more liberal standard in favor of removing defendants.  In *Dart Cherokee,* the U.S. Supreme Court held that a removal must only contain "a short and plain statement of the grounds for removal." *Id.* at 553 (quoting 28 U.S.C. § 1446(a)).  The Court noted that this same language is used for the pleading standard in Rule 8(a) of the Federal Rules of Civil Procedure. *Id.*  The use of this language in the removal statute was intentional—clearly indicating that courts should apply the same liberal pleading standards to notices of removal as they should to plaintiffs' complaints and other pleadings. *Id.*  The Court further held that a removing defendant need not submit evidence with its pleading that establishes that the elements of federal subject matter jurisdiction are met. *Id.* at 552-53.  Only if the court or another party challenges jurisdiction should the court require a removing defendant to prove, under the applicable "preponderance" standard, that the jurisdictional requirements are met. *Id.* at 553-54.  The Court summarized its holding as follows: "[i]n sum, as specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.    Evidence establishing the amount is required by §1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Id.* at 554.  Also, there is no "presumption against removal" in CAFA cases, because CAFA was specifically enacted by Congress "to facilitate adjudication of certain class actions in federal court." *Id.*

**A.    <u>There are at least 100 class members in Plaintiff's Proposed Class.</u>**

17.    In this action, Plaintiff seeks to represent a proposed class defined as follows: "All current and former hourly-paid and/or non-exempt employees who worked for Defendant in the State of California at any time during the period from

1    four years prior to the date of the filing of this Complaint through final judgment."

2    (Compl. ¶ 24.)

3        18.    Plaintiff also proposes a subclass defined as: "All former hourly-paid

4    and/or non-exempt employees who worked for Defendant in the State of California at

5    any time during the period from four years prior to the date of the filing of this

6    Complaint through final judgment." (Compl. ¶ 25.)

7        19.    Plaintiff's Complaint omits any reference to the specific number of

8    individuals in the putative class, alleging only "[t]he Class is so numerous that the

9    individual joinder of all its members is impracticable." (Compl. ¶ 28.)  Based on a

10    review and analysis of the business records of Defendant, the Defendant has employed

11    at least 1,380 individuals in non-exempt positions in California from September 19,

12    2021, to October 28, 2025.  (Declaration of Magdalena Sudibjo ["Sudibjo Decl."] ¶

13    7.) There were at least 740 individuals whose employment was separated within three

14    years prior to the filing of the Complaint (September 19, 2022).  *Id.* ¶ 13.  There were

15    at least 733 individuals who received at least one wage statement within one year prior

16    to the filing of the Complaint (September 19, 2024).  *Id.*  ¶ 14.  Thus, the first

17    requirement for CAFA jurisdiction is satisfied.

18        20.    Based on the above, there are more than 100 putative class members in

19    Plaintiff's proposed class.

20        **B.    The Combined Claims of All Putative Class Members Exceed $5

21    Million Exclusive of Interest and Costs.**

22        21.    Based on Plaintiff's allegations in the Complaint and other evidence

23    collected by Defendant, the aggregate value of the claims of Plaintiff's proposed class

24    exceeds the $5 million threshold needed to establish federal jurisdiction under the

25    Class Action Fairness Act.  The $5 million jurisdictional minimum may be based on

26    aggregation of the claims of all potential class members.  28 U.S.C. § 1132(d)(6).

27        22.    With respect to CAFA's $5,000,000 threshold for the "amount in

28    controversy," it is not the same as the amount ultimately recovered.  *Lara v. Trimac*

*Transp. Servs. Inc.*, 2010 WL 3119366 at *3 (C.D. Cal. Aug. 6, 2010). Rather, in assessing the amount in controversy, a court must "assume that all the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiffs on all claims made in the complaint." *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002). The ultimate inquiry is what amount is put "in controversy" by Plaintiff's Complaint, not what Defendant will actually owe. *Rippee v. Boston Market Corp.*, 408 F.Supp.2d 982, 986 (S.D. Cal. 2005). In other words, "the amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) (citing *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008). "The amount in controversy is determined by the universe of what the Plaintiff puts at-issue in the complaint." *Schiller v. David's Bridal, Inc.*, 2010 WL 2793650, at *6 (E.D. Cal. July 14, 2010).

23.   To establish the amount in controversy, a defendant "need not concede liability for the entire amount," and it is error for a district court to require such a showing. *Lewis*, *supra*, 627 F.3d at 400; see also *Angus v. Shiley, Inc.*, 989 F.2d 142, 146 (3d Cir. 1993) ("the amount in controversy is not measured by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated."); *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) (stating that "[t]he amount-in-controversy inquiry in the removal context is not confined to the face of the complaint," and that the court may also consider summary-judgment-type evidence relevant to the amount in controversy at the time of removal) (citations omitted).

24.   Furthermore, a defendant's assumptions in an amount in controversy calculation does not require actual proof, but rather it need only show "reasonable grounds" for the assumptions. *Arias v. v. Residence Inn,* 936 F.3d 920, 927 (9th Cir. 2019). Defendant's estimate of the amount-in-controversy, as set forth below, is conservative in nature as it relies on conservative assumptions as to the frequency of

1  off-the-clock minimum and overtime unpaid wages, meal period and rest break

2  violations, penalties for inaccurate wage statements, and waiting time penalties alleged

3  in the Complaint.[1]

4    25.    As shown below, the evidence shows that Plaintiff's causes of action

5  place more than $5 million in controversy.

6    **1.    Plaintiff's First Cause of Action for Unpaid Minimum Wages**

7    **Places at least $473,508 in Controversy**

8    26.    Plaintiff's First Cause of Action seeks unpaid minimum wages for the

9  time that Plaintiff and members of the proposed Class were engaged, suffered, or

10  permitted to work without being paid wages for all of the time in which they were

11  subject to Defendant's control.  (Compl. ¶¶ 34-38.)

12    27.    Specifically, Plaintiff alleges that Defendant had a "pattern and practice

13  of wage abuse … requiring Plaintiff and the other Class Member to work off-the-clock

14  without compensation, [and] failing to properly pay wages for all hours worked …"

15  (Compl. ¶ 21.)

16    28.    Plaintiff further alleges that, "Plaintiff and the other Class Members were

17  frequently suffered or permitted to work 'off-the-clock' prior to clocking in or after

18  clocking out for their shifts, such that they were not paid minimum wage for all hours

19  worked."  (Compl. ¶ 34.)

20    29.    Plaintiff further alleges that, "Defendants regularly failed to pay at least

21  minimum wages to Plaintiff and the other Class Members for all hours they worked in

22  violation of California Labor Code sections 1194, 1197, and 1197.1." (Compl. ¶ 35.)

23    30.    Under Labor Code sections 1194 and 1194.2, an employee is entitled to

24  at least minimum wage for all hours worked, and when that amount is not paid,

25  liquidated damages in the amount of the unpaid minimum wage.

26

27  _____

[1] Defendant reserves the right to present additional information regarding the amount
placed in controversy by Plaintiff's causes of action in response to any Motion to
28  Remand or Order to Show Cause challenging the propriety of this Removal.

DEFENDANT CALERES, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO
UNITED STATES DISTRICT COURT

31.    The statute of limitations for a claim seeking wages for failure to pay minimum wages for all hours worked is three years. Cal. Civ. Proc. Section 338. However, this statute of limitations is extended to four years where, as here the complaint includes a claim for Unfair Business Practices under California Business & Professions Code §§ 17200, *et seq*. Therefore, if the allegations are true, Defendant would owe additional compensation and liquidated damages to each individual employed in a non-exempt position in California who was subjected to "off-the-clock" work for all such time from September 19, 2021, to the present.

32.    Plaintiff's Complaint does not allege the number of hours for which Plaintiff and class members allegedly worked "off-the-clock." Plaintiff only alleges that Plaintiff and class members "were frequently suffered or permitted to work 'off-the-clock'" and "Defendants regularly failed to pay at least minimum wages to Plaintiff and the other Class Members for all hours they worked." (Compl. ¶¶ 34-35.)

33.    Because the Complaint does not allege any particular amount of time Plaintiff and class members were purportedly made to work "off-the-clock," Defendant may assume a reasonable violation rate for purposes of calculating the amount in controversy as to the Unpaid Minimum Wages claim. *See Mariscal v. Arizona Tile, LLC*, 2021 WL 1400892 (C.D. Cal. April 14, 2021), ("[Plaintiff's] Complaint alleges that [defendant] has 'engaged in a pattern and practice' of wage abuse by, among other things, 'failing to pay them for all regular and/or overtime wages earned,' [citation]; therefore, an assumption that each putative class member worked one hour of unpaid overtime per workweek is reasonable.")

34.    When determining the amount placed in controversy by Plaintiff's allegations that Defendant had a "policy and practice," "regularly," and "frequently" required Plaintiff and class members to work "off-the-clock" and failed to pay for that work, a violation rate of twelve minutes per workweek is reasonable.  *See e.g. Francisco v. Emeritus Corporation*, 2017 WL 2541401, *7 (C.D. Cal. June 12, 2017) ("Because Plaintiff claims that unpaid minimum wage and overtime violations

occurred regularly, as a pattern and practice, the Court finds Defendants' assumption of one minimum wage and overtime violation per workweek to be reasonable."); *Lewis v. Arvato Digital Services, LLC*, 2025 WL 1554331, *3 (C.D. Cal. May 28, 2025) (finding an assumption of one hour of unpaid regular wages per week was reasonable when plaintiff alleged a "policy and practice" and no further distinctions.); *Soto v. Tech Packaging, Inc.*, 2019 WL 6492245, *5 (C.D. Cal. Dec. 3, 2019) (finding reasonable defendant's assumption that the class members were not compensated for one hour of minimum wages per week where plaintiff alleges a "pattern and practice" of wage abuse.); *Soto v. Greif Packaging, LLC*, 2018 WL 1224425, *3 (C.D. Cal. Mar. 8, 2018) (finding reasonable defendant's assumption that the plaintiff and class members were not compensated for one hour of minimum wage per work week when plaintiff alleged violations on a "consistent and regular basis.")

35.    Based on Defendant's records, Defendant has employed at least 1,380 individuals in non-exempt positions in California from September 19, 2021, to October 28, 2025.  (Declaration of Magdalena Sudibjo ["Sudibjo Decl."] ¶ 7.)  The analysis of Defendant's records also showed that during the time period from October 8, 2021, to October 28, 2025, Caleres hourly non-exempt employees in California, collectively, worked at least 74,313 workweeks, of which at least 40,491 workweeks were forty (40) hours or more. (Sudibjo Decl. ¶¶ 8-9.)  The average hourly rate of pay for the 1,380 class members was calculated to be $20.78.  (Sudibjo Decl. ¶ 12.)

36.    Using a conservative calculation, if each employee were entitled to an additional hour of compensation at the legal minimum wage for only the weeks the employees worked forty (40) hours, they would be entitled to at least $14.00 in unpaid minimum wages[2], for each week he or she worked no more than forty hours during

_____

[2] The lowest legal minimum wage in effect between October 8, 2021, to October 28,

the time period from October 8, 2021, to October 28, 2025. In total, Plaintiff and the class members would be entitled to $176,592.60 (33,822 workweeks of less than forty hours worked * 1.0 hours/week of unpaid minimum wages * $14.00/hour = $473,508.).

37.    Therefore, the amount placed in controversy by Plaintiff's Unpaid Minimum Wages claim is at least **$473,508**.[3]

## 2.    <u>Plaintiff's Second Cause of Action for Unpaid Overtime Places at least $1,262,104.47 in Controversy.</u>

38.    Plaintiff's Second Cause of Action seeks unpaid overtime wages for the time that Plaintiff and members of the proposed Class worked overtime and Defendant failed to pay all overtime wages owed to Plaintiff and class members.  (Compl. ¶¶ 39-46.)

39.    Specifically, Plaintiff alleges that Defendant had a "pattern and practice of wage abuse … requiring Plaintiff and the other Class Member to work off-the-clock without compensation, [and] failing to properly pay wages for all hours worked …" (Compl. ¶ 21.)

40.    Plaintiff further alleges that "Plaintiff and the other Class Members regularly worked in excess of eight (8) hours in a day, in excess of twelve (12) hours in a day, in excess of forty (40) hours in a week, and/or in excess of seven (7) consecutive days in a workweek. However, Defendants did not accurately record Plaintiff and the other Class Members' actual hours worked and intentionally and willfully failed to pay all overtime wages owed to Plaintiff and the other Class Members. Defendants' failure to pay correct overtime wages included, *inter alia*: (a) when the combined total of the off-the-clock work discussed *supra* and the on-the-

---

2025 for an employer of more than 25 employees was $14.00/hour.  *See* "History of California Minimum Wage," available at *https://www.dir.ca.gov/iwc/minimumwagehistory.htm.*

[3] Plaintiff also alleges they are entitled to liquidated damages. (Compl., Prayer for Relief, ¶ 38). As such, Plaintiff and class members damages for unpaid wages may be doubled, adding an additional $473,508 to the amount in controversy.

clock work exceed the number of hours that trigger the payment of overtime wages under California Labor Code sections 510 and 1198 and/or the applicable IWC Wage Order; (b) when Defendants intentionally, willfully, and/or negligently mischaracterized overtime as straight time; (c) when Defendants assigned more work than could reasonably be completed in a workday or workweek to Plaintiff and Class Members, but refused to authorize the overtime necessary for them to complete the assigned work; and (d) when Defendants failed to include all required wages and renumeration when calculating setting the overtime rate." (Compl. ¶¶ 44.)

41.     Under Labor Code sections 1194, an employee is entitled to recover the unpaid balance of the full outstanding amount of overtime compensation.

42.     The statute of limitations for a claim seeking wages for failure to pay overtime wages for all hours worked is three years. Cal. Civ. Proc. Section 338. However, this statute of limitations is extended to four years where, as here the complaint includes a claim for Unfair Business Practices under California Business & Professions Code §§ 17200, *et seq*. Therefore, if the allegations are true, Defendant would owe additional compensation to each individual employed in a non-exempt position in California who worked overtime and was not properly paid the accurate compensation for the work performed from September 19, 2021, to the present.

43.     Based on the allegations in the Complaint, or lack of, Defendant may assume a reasonable violation rate for purposes of calculating the amount in controversy as to Plaintiff's Unpaid Overtime Wages claim. *Tamimi v. SGS North America, Inc.*, 2019 WL 3408692, *2 (C.D. Cal. July 29, 2019) (Defendant allowed to rely on a reasonable violation rate "because the complaint lacks…guidance regarding the frequency of Defendant's alleged overtime violations.")

44.     When determining the amount placed in controversy by Plaintiff's allegations that Defendant had a "policy and practice," of failing to pay Plaintiff and class members overtime compensation, and that Plaintiff and class members "regularly" worked overtime, a violation rate of twelve minutes of overtime per

workweek is reasonable.  *See e.g. Leverman v. Honeywell International Inc.*, 2025 WL 2609856, *7 (C.D. Cal. Sep. 9, 2025) (finding a violation rate of one hour in unpaid overtime per week "is wholly reasonable for Defendant to derive…from the imprecise 'pattern and practice' allegation."); *Venet v. Recreational Equipment, Inc.*, 2025 WL 2048212, *4 (C.D. Cal. July 22, 2025) ("'Courts in this Circuit have often found a 20% violation rate (one unpaid overtime hour per week) a reasonable and 'conservative estimate' when plaintiff alleges a 'policy and practice' of failing to pay overtime wages.'") (citations omitted); *Williams v. ABM Aviation, Inc.*, 2024 WL 3387143, *4 (C.D. Cal. July 12, 2024) (holding an assumption rate of one hour per workweek of unpaid wages was reasonable when plaintiff alleged defendant's violations were part of a "policy and practice."); *Reyes v. Carehouse Healthcare Center, LLC*, 2017 WL 2869499, *3 (C.D. Cal. July 5, 2017) (finding an assumption rate of one violation of unpaid overtime compensation per week reasonable because it was defendant's "regular practice.").

45.    Based on Defendant's records, Defendant has employed at least 1,380 individuals in non-exempt positions in California from September 19, 2021, to October 28, 2025.  (Sudibjo Decl. ¶ 7.)  The analysis of Defendant's records also showed that during the time period from October 8, 2021, to October 28, 2025, Caleres hourly non-exempt employees in California, collectively, worked at least 74,313 workweeks, of which at least 40,491 workweeks were forty (40) hours or more. (Sudibjo Decl. ¶¶ 8-9.)  The average hourly rate of pay for the 1,380 class members was calculated to be $20.78.  (Sudibjo Decl. ¶ 12.)

46.    Using a conservative calculation, if each employee were entitled to an additional hour of overtime compensation for only the weeks the employees worked forty (40) hours or more, they would be entitled to at least $31.56 in unpaid overtime wages, for each week he or she worked forty hours during the time period from October 8, 2021, to October 28, 2025. In total, Plaintiff and the class members would

be entitled to $264,888.89 (40,491 workweeks of forty hours worked * 1 hour/week of unpaid overtime wages * $20.78 average rate of pay * 1.5 = $1,262,104.47).

47.      Therefore, the amount placed in controversy by Plaintiff's Unpaid Overtime Wages claim is at least **$1,262,104.47.**

### 3.   <u>**Plaintiff's Third Cause of Action for Meal Periods Violations Places at least $1,451,088.18 in Controversy.**</u>

48.      Plaintiff's Third Cause of Action seeks premium wages for Defendant's alleged failure to provide meal periods as required by law.  (Compl. ¶¶ 47-57.)

49.      Specifically, Plaintiff alleges that Defendant had a "pattern and practice of wage abuse … [by] failing to provide all meal and rest breaks to which they were entitled and failing to pay meal and rest break premiums when due …" (Compl. ¶ 21.)

50.      Plaintiff further alleges that, "Plaintiff and the other Class Members who were scheduled to work for shifts no longer than six (6) hours, and who did not waive their legally mandated meal periods by mutual consent, were required to work for periods longer than five (5) hours without an uninterrupted meal period of not less than thirty (30) minutes."  (Compl. ¶ 52.)

51.       Plaintiff further alleges that, "Plaintiff and the other Class Members who were scheduled to work for shifts in excess of ten (10) hours but no longer than twelve (12) hours, and who did not waive their legally-mandated meal periods by mutual consent, were required to work for periods longer than ten (10) hours without a second uninterrupted meal period of not less than thirty (30) minutes." (Compl. ¶ 53.)

52.      Plaintiff further alleges that, "Defendants intentionally and willfully required Plaintiff and the other Class Members to work during meal periods and failed to compensate Plaintiff and the other Class Members for work performed during meal periods. This includes, among other things, requiring Plaintiff and Class Members to work through their lunch breaks, permitting and/or requiring Plaintiff and Class Members to take late lunch breaks, permitting and/or requiring Plaintiff and Class Members to take short lunch breaks, interrupting and/or allowing others to interrupt

1    Plaintiff and Class Members during their lunch breaks, failing to relieve Plaintiff and

2    Class Members of all duties during their lunch breaks, and restricting Plaintiff and

3    Class Members from leaving the premises during their lunch breaks." (Compl. ¶ 54.)

4        53.    Plaintiff further alleges that, "[d]uring the relevant time period,

5    Defendants failed to pay Plaintiff and the other Class Members all meal period

6    premiums due pursuant to California Labor Code section 226.7 and 512 and the

7    applicable IWC Wage Order. Defendants failed to include all required wages and

8    renumeration, including non-discretionary commissions, non-discretionary bonuses,

9    and non-discretionary performance pay, when calculating regular rates of pay for

10   meal period premiums and/or merely using straight time pay to calculate regular

11   rates of pay for meal period premiums." (Compl. ¶ 55.)

12       54.    Plaintiff further alleges that, "Plaintiff and the other Class Members are

13   entitled to recover from Defendants one additional hour of pay at their regular rate of

14   compensation for each workday that a compliant meal period was not provided as

15   well as interest thereon." (Compl. ¶ 57.)

16       55.    The statute of limitations for a claim seeking premium wages for failure

17   to provide legally required meal periods and rest breaks is three years. Cal. Civ. Proc.

18   § 338.   This statute of limitations is extended to four years where, as here, the

19   Complaint includes a claim for Unfair Business Practices under Bus. & Prof. Code §

20   17200.  Accordingly, if the allegations of the Complaint are true, Defendant owes each

21   individual employed in a non-exempt position in California an additional hour of pay

22   for each work day between September 19, 2021 and the present that such individual

23   either did not receive a meal break prior to their fifth hour of work or did not receive

24   a second meal break on days when employee worked ten hours of work or more.

25       56.    The Complaint does not allege the number of meal periods not provided

26   to Plaintiff or putative class members for which premium pay is due. Therefore,

27   Defendant may assume a conservative violation rate to calculate the amount in

28   controversy as to Plaintiff's Meal Period claim. *See Perez v. Rose Hills Co.*, 131 F.4th

804, 810 (9th Cir. 2025) (approving violation rate of one hour of unpaid straight time, one hour of overtime pay, one hour of meal period premiums, and one hour of rest period premiums per workweek per putative class employee where plaintiff used "at times" language in the Complaint.)

57.     Where a class action complaint alleging failure to provide meal periods does not provide this detail, courts in the Ninth Circuit, especially this district, have held that assuming a 20% violation rate, or one missed meal period per week of full-time employment, is reasonable. *See e.g., Mendieta v. Williams Scotsman, Inc.*, 2025 WL 104095, *4 (C.D. Cal. Jan. 15, 2025) ("It is reasonable for Defendant to assume a 25% violation rate [for the meal period claim] where Plaintiff has alleged a 'policy and practice' violation."); *Garcia v. William Scotsman, Inc.*, 2024 WL 4289895 at *5 (C.D. Cal. Sept. 25, 2024) (accepted 20% violation rate because plaintiff alleged a "pattern and practice" of meal period and rest break violations, and notes this violation rate, "has been upheld based on similar pleading language and called 'conservative' by this district."); *Salazar v. PODS Enters., LLC*, 2019 WL 2023726, *2-3 (C.D. Cal. May 8, 2019) (holding that calculations using a 20% violation rate was conservative and reasonable where complaint alleged "pattern and practice" of meal and rest break violations."); *Mendoza v. Savage Services Corp.*, 2019 WL 1260629, at *2 (C.D. Cal. Mar. 19, 2019) (finding that a 20% violation rate for meal and rest breaks was reasonable where the complaint alleged a "pattern and practice" of violations, and noting that courts in the Central District of California "routinely apply a 20% violation rate . . . for meal and rest period premiums" and citing cases);

58.     Based on Plaintiff's allegations in the Complaint and other evidence collected by Defendant, Plaintiff and the putative class place at least $1,451,088.18 in controversy relating to purported meal period violations.   Ms. Sudibjo analyzed Defendant's business records and determined that its hourly employees in California collectively worked 349,155 shifts of more than five hours between September 19, 2021, and October 28, 2025.  (Sudibjo Decl. ¶ 11.)  The average annual wage during

this time period was $20.78/hour. (Sudibjo Decl. ¶ 12.) If a conservative 20% violation rate is used, there would be a total of 69,831 meal period violations (20% of 349,155) for the putative class as a whole for the entire relevant time period. Collectively, the putative class would be entitled to $1,451,088.18 (69,831 meal period violations * $20.78 meal period premium = $1,451,088.18) in meal period premium wages.

59.    Thus, Plaintiff's Third Cause of Action places at least **$1,451,088.18** in controversy.

### 4.    **Plaintiff's Fourth Cause of Action for Failure to Provide Rest Periods Places at least $1,504,617.46 in Controversy.**

60.    Plaintiff's Fourth Cause of Action seeks premium wages for Defendant's alleged failure to provide rest breaks as required by law. (Compl. ¶¶ 58-67.)

61.    Specifically, Plaintiff alleges that Defendant had a "pattern and practice of wage abuse … [by] failing to provide all meal and rest breaks to which they were entitled and failing to pay meal and rest break premiums when due …" (Compl. ¶ 21.)

62.    Plaintiff further alleges that, "Defendants routinely required Plaintiff and the other Class Members to work three and one-half (3 ½) or more hours without authorizing or permitting a compliant ten (10) minute rest period per each four (4) hour period, or major fraction thereof, worked." (Compl. ¶ 62.)

63.    Plaintiff further alleges that, "Defendants willfully required, suffered, and permitted Plaintiff and the other Class Members to work during what should have been their rest periods. Defendants also failed to relieve Plaintiff and the other Class Members of all duties for ten (10) minutes as required for compliant rest breaks." (Compl. ¶ 63.)

64.    Plaintiff further alleges that, "Plaintiff worked through rest periods, took late rest periods, took interrupted rest periods, and/or took short rest periods, if at all." (Compl. ¶ 64.)

65.    Plaintiff further alleges that, "Defendants had no policy or practice to

pay a premium when rest periods were missed, short, late, and/or interrupted, or otherwise failed to comply with California law, and thus Defendants failed to pay Plaintiff and the other Class Members the full rest period premium due to them in violation of California Labor Code section 226.7 and the applicable IWC Wage Order. Defendants failed to include all required wages and renumeration, including non-discretionary commissions, non-discretionary bonuses, and non-discretionary performance pay, when calculating regular rates of pay for rest period premiums and/or merely using straight time pay to calculate regular rates of pay for rest period premiums. (Compl. ¶ 66.)

66.    Plaintiff further alleges that he and the class members are entitled to one hour of premium pay for each day in which a rest period was not provided.  (Compl. ¶ 65.)

67.    The statute of limitations for a claim seeking premium wages for failure to provide legally required meal periods and rest breaks is three years.  Cal. Civ. Proc. § 338.   This statute of limitations is extended to four years where, as here, the Complaint includes a claim for Unfair Business Practices under California Business and Professions Code section 17200.  Accordingly, if the allegations of the Complaint are true, Defendant owes each individual employed in a non-exempt position in California an additional hour of pay for each workday between September 19, 2021 and the present that such individual worked in excess of 3.5 hours without receiving a rest break.

68.    The Complaint does not allege the number of rest breaks not provided to Plaintiff or putative class members for which premium pay is due. Therefore, Defendant may assume a conservative violation rate to calculate the amount in controversy as to Plaintiff's Rest Period claim. *See Perez*, *supra*, 131 F.4th at 810 (9th Cir. 2025) (approving violation rate of one hour of unpaid straight time, one hour of overtime pay, one hour of meal period premiums, and one hour of rest period

premiums per workweek per putative class employee where plaintiff used "at times" language in the Complaint.)

69.    Where a class action complaint alleging failure to provide rest breaks does not provide this detail, courts in the Ninth Circuit and in other districts have held that assuming a 20% violation rate, or one missed rest period per week of full-time employment, is reasonable.  *See e.g.*, *Moore v. Saia Motor Freight Line, LLC*, 2025 WL 2217428, *3 (C.D. Cal. Aug. 4, 2025) (finding "an assumption of a 25% violation rate is reasonable when a plaintiff alleges the violations occur … regularly, or are the result of a policy and practice.") *Rombaut v. U.S. Concepts LLC*, 2025 WL 2044670, *6 (C.D. Cal. July 18, 2025) (finding 20% violation rate to be reasonable when Plaintiff alleged violations occurred "often" and defendants had a "policy and practice" of denying breaks.); *Ortiz-Dixon v. FedEx Ground Package Sys., Inc.*, 2023 WL 9064893, *3 (C.D. Cal. Dec. 7, 2023) (holding a 20% violation rate assumption to be reasonable where allegations are coupled with "pattern and practice" allegations in the complaint."); *Baker v. Propak Logistics, Inc.*, 2019 WL 4168998, *4 (C.D. Cal. Sep. 3, 2019) (holding a 20% violation rate was reasonable when plaintiff alleged a "pattern and practice" of rest break violations.).

70.    Based on Plaintiff's allegations in the Complaint and other evidence collected by Defendant, Plaintiff and the putative class place at least $1,504,617.46 in controversy relating to purported rest period violations.   Ms. Sudibjo analyzed Defendant's business records and determined that its hourly employees in California collectively worked 362,036 shifts of more than three and one-half hours between September 19, 2021, and October 28, 2025.  (Sudibjo Decl. ¶ 10.)  The average annual wage during this time period was $20.78/hour.  (Sudibjo Decl. ¶ 12.)  If a conservative 20% violation rate is used, there would be a total of 72,407 rest period violations (20% of 362,036) for the putative class as a whole for the entire relevant time period. Collectively, the putative class would be entitled to $1,504,617.46 (72,407 rest period

violations * \$20.78 rest period premium = \$1,504,617.46) in rest period premium wages.

71.     Thus, Plaintiff's Fourth Cause of Action places at least **$1,504,617.46** in controversy.

### 5.     Plaintiff's Sixth Cause of Action for Non-Complaint Wage Statements Places at least $1,229,500 in Controversy.

72.     Plaintiff's Sixth Cause of Action seeks penalties under California Labor Code section 226 for failure to provide accurate itemized wage statements. (Compl. ¶¶ 74-79.) The applicable penalty is fifty dollars for the initial pay period in which a violation occurs, and one hundred dollars for each violation in a subsequent pay period, up to a maximum aggregate penalty of four thousand dollars. Cal. Lab. Code § 226(e).

73.     Specifically, Plaintiff alleges that Defendant had a "pattern and practice of wage abuse … [by] failing to provide accurate wage statements …" (Compl. ¶ 21.)

74.     Plaintiff further alleges that, "As a result of the violations set forth in detail above (failure to pay overtime, failure to pay minimum wages, meal break violations, and rest break violations), Defendants intentionally and willfully failed to provide Plaintiff and the other Class Members with complete and accurate wage statements. The deficiencies include, among other things, the failure to state all hours worked, the failure to state the actual gross wages earned, the failure to include meal and rest break premiums, and the failure to include correct rates of pay. Accordingly, Defendants violated California Labor Code 226(a)." (Compl. ¶ 76.)

75.     Plaintiff further alleges that, "As a result of Defendants' violation of California Labor Code section 226(a), Plaintiff and the other Class Members have suffered injury and damage to their statutorily protected rights." (Compl. ¶ 77.)

76.     Plaintiff further alleges that, "Plaintiff and the other Class Members have been injured by Defendants' intentional violation of California Labor Code section 226(a) because they were denied both their legal right to receive, and their protected

interest in receiving accurate, itemized wage statements under California Labor Code section 226(a). In addition, because Defendants failed to provide the accurate number of total hours worked on wage statements, Plaintiff and the other Class Members have been prevented by Defendants from determining if all hours worked were paid and the extent of the underpayment. Plaintiff had to file this lawsuit, and will further have to conduct discovery, reconstruct time records, and perform computations in order to analyze whether in fact Plaintiff and the other Class Members were paid correctly and the extent of the underpayment, thereby causing Plaintiff to incur expenses and lost time. Plaintiff would not have had to engage in these efforts and incur these costs had Defendants provided the accurate number of total hours worked. This has also delayed Plaintiff's ability to demand and recover the underpayment of wages from Defendants." (Compl. ¶ 78.)

77.    Plaintiff further alleges that, "Plaintiff and the other Class Members are entitled to recover from Defendants the greater of their actual damages caused by Defendants' failure to comply with California Labor Code section 226(a), or an aggregate penalty not exceeding four thousand dollars ($4,000)." (Compl. ¶ 79.)

78.    As noted above, for purposes of calculating the amount-in-controversy, this Court can and should assume that each putative class member experienced one meal period violation and one rest period violation for every five meal-period eligible shifts, and worked at least one hour each week for which minimum and/or overtime wages were due but not paid. On those reasonable assumptions, each putative class member would be owed at least one meal period premium for every five shifts worked of more than five hours, one rest break premium for every five shifts worked of more than 3.5 hours, and one hour of minimum and/or overtime wages for each week in which he/she worked. As these wages were not paid to them, they did not appear on the wage statement issued to them. Accordingly, if Plaintiff's allegations and legal theories are correct, each wage statement issued to putative class members during the relevant time period did not accurately state all gross and net wages earned, or all hours

worked. *See e.g. Nieves v. Centerra Integrated Fleet Services, LLC*, 2025 WL 2155373, *6 (C.D. Cal. July 29, 2025) ("this Court, and other courts within this circuit, have repeatedly found it 'appropriate for Defendant to assume a 100% violation rate as to the derivative wage statement and waiting time claims."); *Valero v. MKS Instruments*, 2025 WL 72171, *5 (C.D. Cal. Jan. 8, 2025) (holding a 100% wage statement violation is appropriate when it is "derivative of the other class claims."); *Garcia*, *supra*, 2024 WL 4289895, *8 (finding 100% violation rate reasonable where complaint alleged wage statement inaccuracies as derivative of other claims resulting from "pattern and practice" and of "intentional and willful" failure to provide accurate wage statements.).

79.    The California Labor Code provides for a penalty of $50.00 for the initial pay period in which a violation of Labor Code section 226(a) occurred, and $100.00 for each subsequent pay period in which a violation of Labor Code section 226(a) occurred, not to exceed an aggregate penalty of $4,000.00 per class member. Cal. Lab. Code § 226(e).

80.    The applicable statute of limitations to recover penalties under California Labor Code section 226(e) is one year. Cal. Civ. Proc. § 340(a). Accordingly, if the allegations of the Complaint and Plaintiff's legal theories are correct, any individual employed by Defendant in a non-exempt position in California on or after September 19, 2024 through present is entitled to penalties under California Labor Code section 226(e) for each wage statement issued during that time period. Ms. Sudibjo calculated, based on review of Defendant's payroll records, that 734 non-exempt employees received at least one wage statement during this time period, and that Defendant issued a total of 12,662 wage statements to its California non-exempt employees during this time period, and that no employee received more than 40 wage statements during this period. (Sudibjo Decl. ¶ 14.) Accordingly, if Plaintiff's

allegations are correct, the putative class would be entitled to recover $1,229,500 in wage statement penalties.[4]

81.    Accordingly, given the inputs above, Plaintiff and the other class members would be entitled to recover at least $1,229,500.

82.    Thus, Plaintiff's Sixth Cause of Action places at least **$1,229,500** in controversy.

### 6.    Plaintiff's Seventh Cause of Action for Waiting Time Penalties Places at least $3,795,756.00 in Controversy.

83.    Plaintiff's Seventh Cause of Action seeks waiting time penalties under California Labor Code section 203 for failure to timely pay wages due at termination. (Compl. ¶¶ 80-84.)  California Labor Code section 203 provides that, if an employer willfully fails to pay all wages due at termination, the employer must, as a penalty, continue to pay the subject employees' wages until the back wages are paid in full or an action is commenced, up to a maximum of 30 days continuation wages.  Cal. Lab. Code § 203(a).

84.    Specifically, Plaintiff alleges that Defendant had a "pattern and practice of wage abuse … [by] failing to timely pay wages … upon termination of employment." (Compl. ¶ 21.)

85.    Plaintiff further alleges that "As a result of the violations set forth in detail above (failure to pay overtime, failure to pay minimum wages, meal break violations, and rest break violations), at the time that Plaintiff and the other Class Members' employment with Defendants ended, Defendants knowingly and willfully failed to pay them all wages owed to them pursuant to California Labor Code sections 201 and 202, including, without limitation, overtime wages, minimum wages, meal period premium wages, and rest period premium wages." (Compl. ¶ 83.)

---

[4] Calculated as follows: (734 putative class members * $50 initial violation) + ((12,662 wage statements-734 initial wage statements) * $100 subsequent violation) = $1,229,500.

86.    Plaintiff further alleges that "As a result, Plaintiff and the other Class Members are entitled to all available statutory penalties, including the waiting time penalties provided in California Labor Code section 203, together with interest thereon, as well as other available remedies." (Compl. ¶ 84.)

87.    It is reasonable to assume that every employee terminated during the statutory period would have experienced at least one wage/hour violation—and therefore would not have been paid certain wages due— where plaintiffs allege a "laundry list" of potential wage/hour violations, as Plaintiff has done here. *Moppin v. Los Robles Reg'l Med. Ctr.*, 2015 WL 5618872 at *4 (C.D. Cal. Sept. 24, 2015); *Byrd v. Masonite Corp.*, 2016 WL 2593912 at *2-3 (C.D. Cal. May 5, 2016); *Torrez v. Freedom Mortgage, Corp.*, 2017 WL 2713400 at *4 (C.D. Cal. June 22, 2017); *Garcia, supra*, 2024 WL 4289895, at *6-8.  As in *Byrd*, Plaintiff here has alleged "a broad, uniform policy of multiple Labor Code violations," 2016 WL 2593912 at *3, and "fails to assert any different rate of violation or submit evidence indicating a different rate of violation," *Id.*  And similar to *Moppin*, Plaintiff alleges that, due to Defendant's "pattern and practice of wage abuse," Defendant failed to pay meal and rest period premiums and overtime and minimum wages. (Compl. ¶ 21, 35, 44, 55, and 66.)  In *Torrez*, the Court concluded that the Complaint alleged a 100% violation rate for waiting time penalties by alleging "during the relevant time period, [defendant] intentionally and willfully failed to pay Plaintiff and the other class members who are no longer employed by [defendant] their wages, earned and unpaid, within seventy-two hours of their leaving [defendant's] employ."  2017 WL 2713400 at *4.  Similarly here, Plaintiff alleges "at the time that Plaintiff and the other Class Members' employment with Defendants ended, Defendants knowingly and willfully failed to pay them all wages owed to them pursuant to California Labor Code sections 201 and 202, including, without limitation, overtime wages, minimum wages, meal period premium wages, and rest period premium wages."  (Compl. ¶ 83.)

88.    Moreover, as noted above, for purposes of calculating the amount-in-controversy, this Court can and should assume that each putative class member is owed at least one hour of unpaid minimum and/or overtime wages.  Hence, each putative class member who was terminated did not receive all wages due to him or her at the time of termination, and any putative class member whose employment terminated more than 30 days ago is entitled to 30 days' continuation wages as a penalty under California Labor Code section 203.  *Mamika v. Barca*, 68 Cal. App. 4th 487, 493 (Cal. Ct. App. 1998) (a "proper reading of section 203 mandates a penalty equivalent to the employee's daily wages for each day he or she remained unpaid up to a total of 30 days."); *Quintana v. Claire's Stores, Inc.*, No. 13-0368-PSG, 2013 WL 1736671, at *6 (N.D. Cal. Apr. 22, 2013) (finding that the defendants' 30 day waiting time penalties calculation was "a reasonable estimate of the potential value of the claims" where the complaint alleged that the defendants "regularly required" putative class members to work without compensation, and the defendants estimated that each putative class member "potentially suffered at least one violation that continues to be unpaid"); *Giannini v. Northwest Mut. Life Ins. Co.*, No. C 12-77 CW, 2012 WL 153196, at *4 (N.D. Cal. Apr. 30, 2012) (determining defendant's assumption of maximum waiting time penalties were reasonable "based on the allegations of Plaintiff's Complaint, which suggest that all class members were denied at least some form of compensation" during their employment).

89.    Also as noted above, for purposes of calculating the amount-in-controversy, this Court can and should assume that each putative class member experienced one meal period violation and one rest period violation per week and worked one hour of unpaid minimum and/or overtime wages.  On those reasonable assumptions, each putative class member would be owed at least one meal period premium, one rest break premium, and one hour of unpaid minimum and/or overtime wages for each week worked.  Hence, for this additional reason, each putative class member who was terminated did not receive all wages due to him or her at the time of

termination, and any putative class member whose employment terminated more than 30 days ago is entitled to 30 days' continuation wages as a penalty under California Labor Code section 203. *Stevenson v. Dollar Tree Stores, Inc.*, No. CIV S-11-1433 KJM, 2011 WL 4928753, at *4 (E.D. Cal. Oct. 17, 2011) (finding it reasonable for defendant to assume, in light of the allegations in the complaint that putative class members missed meal periods, that "all members of the proposed class … would have missed a meal period as described in the complaint at least once and were thus entitled to the waiting time penalty"); *Ramos v. Schenker, Inc.*, 2018 WL 5779978, at *2 (C.D. Cal. Nov. 1, 2018) ("[a plaintiff's] allegations of unpaid wages are implicit allegations of maximum damages for waiting time penalties.") (collecting cases); *Mariscal*, 2021 WL 1400892 at * 3 ("[I]t is appropriate to assume each one of the 147 terminated class members was owed but not paid at least some of their wages at termination and accrued 30 days of waiting time penalties based on those unpaid wages.")

90.    The applicable statute of limitations for a claim under California Labor Code section 203 is three years. Cal. Lab. Code § 203; Cal. Civ. Proc. § 338. If the allegations of the Complaint and Plaintiff's legal theories are correct, Defendant owes the maximum 30 days of continuation wages to each putative class member who terminated employment between September 19, 2022, and the present. A review of the Company's employment records reveals that there are at least 740 such individuals. (Sudibjo Decl. ¶ 13.) If the allegations of the Complaint and Plaintiff's legal theories are correct, Defendant owes thirty (30) days of continuation wages to each of these 740 individuals. *See e.g. Duncan v. Baxalta United States Inc.*, 2025 WL 40482, *3 (C.D. Cal. Jan. 7, 2025) ("It is reasonable for [defendant] to assume each of the 182 discharged putative class members are eligible for waiting time penalties because if they were not, they would have no business in Plaintiff's putative class because they never suffered a labor code violation."); *Alarcon v. Target Corp.*, 2025 WL 2155371, *4 (C.D. Cal. July 28, 2025) (finding a 100% violation rate appropriate because the waiting time penalties were derivative of other alleged claims.)

91.    Ms. Sudibjo calculated, based on Defendant's records, that the average hourly wage for the Company's non-exempt California employees who separated from employment on or after September 19, 2022, was $20.60 per hour, and they worked, on average 8.3 hours per shift.  (Sudibjo Decl. ¶ 13.)  Accordingly, each of these employees would be owed at least an additional $5,124.42, on average, if each were entitled to an additional 30 days' wages, based on 8.3 hours per workday (30 days * 8.3 hours/day * $20.60 /hour = $5,129.40, not including premium wages for overtime. These 740 employees, collectively, would be owed at least $3,795,756.00 ($51,239.40 * 740).

92.    Thus, Plaintiff's claim for waiting time penalties under the Seventh Cause of Action places at least **$3,795,756.00** in controversy.

### 7.    Plaintiff's Prayer for Attorneys' Fees Places an Additional $2,036,953.97 in Controversy.

93.    Plaintiff seeks attorneys' fees on behalf of the putative class for the work prosecuting their First through Nineth Causes of Action.  (Compl. ¶¶ 3, 37, 46; and Prayer for Relief, ¶¶ 9, 15, 21, 44, 49.)  The Ninth Causes of Action, moreover, incorporate the First through Eighth Causes of Action, as it alleges that the conduct alleged in each of these constitutes an unlawful and/or unfair business act and practice in violation of Business and Professions Code section 17200, *et seq*.  (Compl. ¶¶ 89-94.)  The Complaint therefore effectively seeks attorney's fees on all ten causes of action.

94.    Attorneys' fees are properly included in the amount in controversy.  *See, Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007) (statutorily-mandated attorneys' fees are properly included in the amount in controversy for CAFA jurisdiction purposes); *see also, Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (attorneys' fees may properly be included in calculation of the amount of controversy where an underlying statute authorizes an award of attorneys' fees).

95.     Although there is no *per se* rule that the amount of attorneys' fees in controversy in class actions is 25 percent of all other alleged recovery, *Fritsch v. Swift Transp. Co. of Ariz. LLC*, 899 F.3d 785, 796 (9th Cir. 2018), courts routinely grant attorneys' fees awards that range from 25% to 33% of the settlement or verdict amount. *See, e.g.*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees."); *In re Activision Securities Litigation*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) (awarding 30% attorneys' fee award and compiling cases where range of attorneys' fee award ranged between 25% and more than 40%).

96.     Accordingly, including attorneys' fees of 25% is reasonable when calculating the amount in controversy.  "[T]he benchmark need only be adjusted when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Cortez v. United Natural Foods, Inc.*, No. 18-CV-04603-BLF, 2019 WL 955001, *7 (N.D. Cal. Feb. 27, 2019) (internal quotation marks and citation omitted); *see also Ramirez v. Benihana National Corp.*, 2019 WL 131843 at *2 (N.D. Cal. Jan. 8, 2019) (applying 25% benchmark post-*Fritsch* because no factors "reflect a departure from such benchmark is warranted").  No such adjustment is needed in a "typical wage and hour class action to which courts in this Circuit would likely apply the 25% benchmark rate." *Cortez,* 2019 WL 955001 at *7.  Indeed, "[w]hen including attorneys' fees within the amount-in-controversy for jurisdictional purposes, courts in this circuit consistently use the 25% benchmark rate." *Garcia v. Lifetime Brands, Inc.*, 2016 WL 81473 at *4, n. 2 (C.D. Cal. Jan. 7, 2016); *accord Ramos v. Schenker, Inc.*, 2018 WL 5779978 at *3 (C.D. Cal. Nov. 1, 2018).

97.     Accordingly, assuming the low-end 25% figure reflected in the case law, a reasonable and conservative assumption for purposes of establishing the amount-in-controversy, attorneys' fees in this matter would amount to at least 25% of the unpaid minimum and overtime wages, meal and rest break premiums, and wage statement and

1   waiting time penalties sought in Plaintiff's First through Fourth and Sixth and Seventh

2   Causes of Action, which, as detailed above, amount to **$9,716,574.11** [$473,508 +

3   $1,262,104.47 + $1,451,088.18 + $1,504,617.46 + $1,229,500 + $3,795,756.00 =

4   $9,716,574.11].     Plaintiff's prayer for attorney's fees therefore adds at least

5   **$2,429,143.52** (25% of $9,716,574.11) to the amount-in-controversy.

6       98.     This brings the total amount-in-controversy to **$12,145,717.63** [$473,508

7   + $1,262,104.47 + $1,451,088.18 + $1,504,617.46 + $1,229,500 + $3,795,756.00 +

8   $2,429,143.52 = $12,145,717.63], easily exceeding the $5 million threshold needed to

9   establish federal jurisdiction under the Class Action Fairness Act.  This calculation is

10  conservative, as it does not include the amount placed in controversy by Plaintiff's

11  Fifth and Eighth Causes of Action (which cannot be calculated with reasonable

12  certainty at this time), and, for the other causes of action, relies on conservative

13  estimates and assumptions where sufficient data is presently lacking to calculate the

14  amount in controversy with greater precision.[5]

### C.     ANY CLASS MEMBER IS A CITIZEN OF A DIFFERENT STATE THAN DEFENDANT.

17      99.     For purposes of establishing diversity under CAFA, this Court need only

18  find that there is diversity between one putative class member and one defendant.  28

19  U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), 1453(a).

20      100.    In addition, the citizenship of fictitiously named "Doe" defendants is to

21  be disregarded for the purposes of removal based on diversity jurisdiction.  28 U.S.C.

22  § 1441(a).

23      101.    Pursuant to 28 U.S.C. section 1332(c), "a corporation shall be deemed to

24  be a citizen of every State and foreign state by which it has been incorporated and of

---

[5] Should the Court or opposing counsel request additional information, evidence and/or calculations to demonstrate that this Action places at least $5 million in controversy, Defendant reserves the right to refine the methodologies used here and calculate the amount-in-controversy with greater precision, which may significantly increase the result.

the State or foreign state where it has its principal place of business." A corporation's headquarters is presumptively the location of its "principal place of business…." *Hertz v. Friend*, 130 S.Ct. 1181, 1192 (2010) ("[I]n practice [a company's principal place of business] should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control and coordination, i.e., the 'nerve center'").

102.    At the time this action commenced in state court, Caleres, Inc. was, and still is, incorporated in the State of New York. (Declaration of Tom Burke at ¶ 3.) Its principal place of business at the time of the filing of the Complaint was, and still is, in the State of Missouri. (Id. at ¶ 4.) Thus, for the purposes of federal diversity jurisdiction, Caleres, Inc. is a citizen of the State of New York and the State of Missouri. As such, Caleres, Inc. is not a citizen of the State of California.

103.    For diversity purposes, an individual is a "citizen" of the state in which he is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). An individual's domicile is the place he resides with the intention to remain or to which he intends to return. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

104.    The Complaint alleges that "Plaintiff Jesus Ramirez is and was an individual residing in the State of California." (Compl. ¶ 9.) The Complaint does not set forth any other allegations pertaining to Plaintiff's domicile, or citizenship. Defendant's employment records confirm that throughout Plaintiff's employment with Defendant, Plaintiff lived in the State of California, including the home address he provided for payroll purposes. (Declaration of Becky Helvey at ¶ 3.) Further, Plaintiff's proposed class includes "[a]ll current and former hourly-paid and/or non-exempt employees who worked for Defendant in the State of California at any time during the period from four years prior to the date of the filing of this Complaint through final judgment." (Compl. ¶ 24.) Thus, on information and belief, Plaintiff is a citizen of the State of California. Moreover, members of the proposed class, who by

definition are or were employed in California, are presumed to be primarily citizens of the State of California.  *See, e.g.*, *Lew v. Moss*, 97 F.2d 747, 750 (9th Cir. 1986) ("place of employment" an important factor weighing in favor of citizenship).

105.   Since at least Plaintiff is a citizen of a different state than Caleres, Inc., the third requirement of CAFA jurisdiction is satisfied.  Moreover, because Caleres, Inc. is not a citizen of California, the exceptions to CAFA jurisdiction under 28 U.S.C. § 1332(d)(3) and (d)(4) are inapplicable.

## IV.   CONCLUSION

106.   This Court, therefore, has original jurisdiction over Plaintiff's claims by virtue of the Class Action Fairness Act 28 U.S.C. § 1332(d)(2).  This action is thus properly removable to federal court pursuant to 28 U.S.C. § 1441.

107.   In the event this Court has a question regarding the propriety of this Notice of Removal, Defendant requests that it issue an Order to Show Cause so that it may have the opportunity to more fully brief the basis for this removal.

WHEREFORE, Defendant removes this action to this Court.

DATED: January 2, 2026

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.


By: /s/ *Christopher W. Decker*
Christopher W. Decker
Haik Kolsuzyan

Attorneys for Defendant
CALERES, INC.

94445063.v3-OGLETREE